MT. HOLLY SKI AREA, Plaintiff,

v.

U.S. ELECTRICAL MOTORS, et al., Defendants,

GENERAL ELECTRIC SUPPLY COMPANY, A DIVISION OF GENERAL ELECTRIC COMPANY, a foreign corporation, Defendant and Cross-Plaintiff,

v.

U.S. ELECTRICAL MOTORS, A DIVISION OF EMERSON ELECTRIC COMPANY, a foreign corporation, Defendant and Cross-Defendant.

Civ. A. No. 86–73892.

United States District Court, E.D. Michigan, S.D.

July 9, 1987.

---

**116**

Robert L. Bunting, Oxford, Mich., for plaintiff.

John L. Christensen, Detroit, Mich., for U.S. Elec. Motors.

Michael H. Whiting, Troy, Mich., for General Elec. Supply.

## MEMORANDUM OPINION AND ORDER

PHILIP PRATT, Chief Judge.

Mt. Holly Ski Area brings this diversity action against Emerson Electric Company and General Electric Supply Company (GESCO) asserting negligence and breach of implied and express warranties under the Michigan Uniform Commercial Code. GESCO now brings this motion for summary judgment on all counts of Mt. Holly's complaint.

A court may enter summary judgment on a claim if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Federal Rule of Civil Procedure 56(c). However, the trial court ought to proceed with caution in granting summary judgment, and may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). The authority of the court to take a case away from the jury is limited, with all doubts to be resolved in the non-movant's favor. *Id.* at 2513. Applying these standards, the court grants the defendant's motion because it is entitled to judgment as a matter of law.

Mt. Holly is a ski resort located in Oakland County, Michigan. In the spring of 1985, Mt. Holly purchased a chairlift system from Riblet Tramway Company of Washington. The terms and conditions of this contract have not been provided by the

parties, and Riblet is not a party to the suit. Riblet ordered a 75–horsepower electric motor from GESCO, a division of General Electric Company, for use in the chairlift system. To fill this order, GESCO purchased a 75–horsepower engine manufactured by Emerson Electric Company from K & N Electric Motors, Inc. of Washington. The contract between GESCO and Riblet contained an express warranty. The warranty obligated GESCO to make its best efforts to obtain from the manufacturer of the engine repair or replacement of the goods. The GESCO–Riblet contract was to be interpreted according to the laws of New York.

The chairlift was installed November, 1985, and the lift was tested on December 12, 1985. The complaint alleges that the motor could not operate the lift system when fully loaded. After attempting to make adjustments, such as laying new electric wire, Mt. Holly obtained a new engine from GESCO, hired a crane, and replaced the old engine with the new one. Mt. Holly did not pay for the new engine, and the court does not know whether Riblet did. The new engine was adequate.

Mt. Holly filed suit against Emerson and GESCO in this court, alleging three theories of liability. First, Mt. Holly claims that the defendants were negligent in their design and their replacement of the faulty machine. Mt. Holly also alleges two claims sounding in implied warranty: breach of implied warranties of merchantability and of fitness for a particular purpose. Finally, Mt. Holly claims that GESCO breached the express warranty to repair or replace made by GESCO to Riblet, and that Mt. Holly is entitled to bring an action based upon this breach. As damages, Mt. Holly claims that over $12,000 in out-of-pocket expenses were incurred in the attempts to perfect the system and the replacement of the engine. It also claims lost revenue from the failure of the lift before the installation of the new engine.

■ GESCO first contends that Mt. Holly's tort claims should be dismissed because they are barred by the economic loss doctrine embodied in *McGhee v. General*

*Motors,* 98 Mich.App. 495, 296 N.W.2d 286 (1980). *McGhee* stands for the proposition that where the relationship between the parties is contractual, and where no personal injury or damage to property other than the goods subject to the contract has occurred, the buyer's rights are limited to those provided by the Uniform Commercial Code. In its brief and at oral argument, the plaintiff does not contest that this doctrine applies. Therefore, summary judgment is granted as to Mt. Holly's tort claims against GESCO.

The contract claims of breach of implied warranties of merchantability and fitness for a particular purpose present the court with a more thorny problem. Michigan has adopted the Uniform Commercial Code (U.C.C.), which reads in applicable part:

Sec. 2313. (1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 2314. (1) Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 2315. Where the seller at the time of contracting has reason to know any particular purpose which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be for such purpose.

\*　　\*　　\*　　\*　　\*　　\*

Sec. 2318. A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that

such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation or this section.

M.C.L.A. 440.2313, .2314, .2315, .2318.

GESCO argues that as a matter of law Mt. Holly, not being in privity with GESCO, may not bring a contract action based on implied warranties. The U.C.C. "takes no comprehensive position on the requirements of privity in warranty claims," leaving this matter up to the courts. Practice Commentary, M.C.L.A. 440.2318. Michigan courts have abolished any privity requirement where the plaintiff alleges some injury to his person. *Piercefield v. Remington Arms Co.*, 375 Mich. 85, 133 N.W.2d 129 (1965). In *Piercefield,* the plaintiff was injured when the barrel of a shotgun, fired by his brother, exploded. The trial court granted summary judgment for the defendants on a count of the complaint alleging breach of warranty because there was no privity of contract. The Michigan Supreme Court reversed.

> Agreeing as all of our recent decisions do with the developing weight of authority, the essence of which is that the manufacturer is best able to control dangers arising from defects of manufacture, I would definitely say that [these recent cases] have put an end in Michigan to the defense of no privity, certainly so far as concerns an innocent bystander injured as this plaintiff pleads, and that a person thus injured should have a right of action against the manufacturer on the theory of breach of warranty as well as upon the theory of negligence.

*Id.* at 97–98, 133 N.W.2d 129. The Michigan Supreme Court intended to create a definite rule by making this decision.[1] *Id.* at 97, 133 N.W.2d 129.

In *Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 182 N.W.2d 800 (1970), a

Michigan appellate court extended *Piercefield* and held that an injured plaintiff could recover for purely economic loss under a breach of implied warranty theory, even if no privity existed. In *Cova,* the owners of a golf course purchased golf carts from a dealer. When the carts proved defective, the owners sued the manufacturer, Harley Davidson, for breach of implied warranty. The court below dismissed the complaint, holding that an action for economic loss could not succeed if privity was lacking. The appellate court reversed. After quoting extensively from *Piercefield* and several other earlier Michigan Supreme Court decisions, the court pronounced its own interpretation of Michigan law:

> Although the Michigan Supreme Court has not in so many words declared that a consumer may recover from a manufacturer for breach of implied warranty without proving negligence and without regard to privity even in a case where the product is not inherently dangerous and no personal injuries have been suffered, the loss being entirely economic, we are persuaded from our review of the foregoing decisions of our Supreme Court and from the trend of authorities in other jurisdictions that a consumer can sue a manufacturer directly for economic loss resulting from a defect in a product attributable to the manufacturer for negligence without proving negligence.

*Id.* at 608–09, 182 N.W.2d 800. The *Cova* court went on to state the policy behind this interpretation:

> On principle the manufacturer should be required to stand behind his defectively-manufactured product and held to be accountable to the end user even though the product caused neither accident nor personal injury. The remote seller should not be insulated from direct liability where he has merely mulcted the consumer.

---

1. The *Piercefield* court determined that this claim should be reinstated against the retailer, the wholesaler, and the manufacturer. No mention was made of M.C.L.A. 440.2318, which the court could have used to hold at least the retailer liable. This omission is further evidence of the *Piercefield* court's intention to abolish the privity requirement in personal injury actions.

*Id.* at 609, 182 N.W.2d 800.[2]

In two recent cases, however, courts have held that the privity requirement retains its validity under Michigan law. In *Auto-Owners Ins. v. Chrysler,* 129 Mich. App. 38, 341 N.W.2d 223 (1983), the court held that a subrogee insurance company could not sue a seller of a component of the allegedly defective device under a breach of warranty theory. In *Auto-Owners,* the insureds bought a motor home, the chassis of which was manufactured by defendant Chrysler Corporation. The motor home suffered fire damage for which the plaintiff insurance company paid out some $16,000. The court held that the insurance company could not pursue a contract action against Chrysler:

> We interpret the trial judge's opinion as holding that plaintiff's subrogors and defendant Chrysler did not have a contractual relationship and therefore defendant could not be liable for breach of warranties arising under the UCC for damage to the product. We agree that no UCC warranty arose in favor of plaintiff and against defendant Chrysler.

*Id.* at 43, 341 N.W.2d 223.

Similarly, in *N. Feldman & Son v. Checker Motor Corp.,* 572 F.Supp. 310 (S.D.N.Y.1983), a New York district court, interpreting Michigan law, came to an identical conclusion. In *Feldman,* the plaintiff bought taxicabs from Checker Cab, which contained diesel engines supplied by General Motors Corporation. After discovering the engines were faulty, the plaintiff brought an action against GM, claiming, as damages, *inter alia,* the costs of repair it was forced to pay. The court held that "any implied warranties made by GM would extend no further than to Checker, the only party to contract with GM in the instant case." *Id.* at 315.

The court is therefore faced with a split in the Michigan Court of Appeals, and must determine how the Michigan Supreme Court would rule if presented with this question. In surveying other jurisdiction to assist the court in deciding this question, it is apparent that no uniform rule has developed. New York, for example, requires privity between the parties in a suit predicated upon a U.C.C. breach of implied warranty where the plaintiff claims only economic damages. *Hole v. General Motors,* 83 A.D.2d 715, 442 N.Y.S.2d 638 (1981); *Avanru v. General Motors Acceptance Corp.,* 130 Misc.2d 440, 495 N.Y.S.2d 1018 (N.Y.City Civ.Ct.1985). In *Hole,* the plaintiff bought a Safari station wagon from a dealer. The car had a defective frame. The plaintiff sued GM for breach of express and implied warranties. The court held that where there was only an economic loss, the plaintiff could not recover against GM:

> To extend the seller's implied warranty to remote parties not in privity so as to permit recovery for economic loss would impair traditional rights of parties to make their own contract and discard the principle that a buyer should pick his seller with care and recover any economic loss from that seller.

*Hole,* 442 N.Y.S.2d at 640. The court added that this analysis applied to express as well as implied warranties.

---

**2.** It should be noted that the court in *Cova* relied heavily on the ambiguous case of *Spence v. Three Rivers Builders & Masonry Supply, Inc.,* 353 Mich. 120, 90 N.W.2d 873 (1958). In *Spence,* the plaintiffs bought some cinder blocks from a broker. The plaintiffs, owners of several resort area cottages, argued that the broker was an agent of the manufacturer but the finder of fact determined that he was not. The plaintiffs' suit in breach of implied warranty against the manufacturer was barred by the court below for lack of privity. The Supreme Court reversed. The court first repeated the rule existing at that time that the plaintiff could bring an action for negligence to recover an economic loss. After reviewing numerous Michigan Supreme Court decisions, the *Spence* court concluded that actually implied warranty actions sounded in negligence. The court concluded:

> [I]f we have thus solemnly told litigants and their counsel that suing for breach of an implied warranty is in effect tantamount to suing for negligence ... we lack the heart to banish this plaintiff in this case because she trustingly took us at our word. We suggest in the future, however, that where warranted by the circumstances, such declarations should sound explicity in negligence as well as for claimed breach of warranty.

*Id.* at 131, 90 N.W.2d 873. The courts find this opaque statement to be a questionable basis for extending *Piercefield.*

In 1980, two noted commentators on the Uniform Commercial Code surveyed the states and concluded that, in the absence of privity, the majority of states do not permit an end user to recover from a remote seller on a breach of implied warranty. White & Summers, Uniform Commercial Code § 11–5, at 407 (2d Ed.1980) (no recovery for direct economic loss); *Id.* at § 11–6, at 409 (no recovery for consequential economic loss). Cases since 1980 show that this status is unchanged. *Compare, e.g., State Fire and Casualty Co. v. J.B. Plastics, Inc.,* 505 So.2d 1223, 1227 (Ala.1987); *Cedars of Lebanon Hospital v. European X–Ray,* 444 So.2d 1068, 1071 & n. 3 (Fla. App.1984), *Szajna v. General Motors,* 115 Ill.2d 294, 104 Ill.Dec. 898, 893–95, 503 N.E.2d 760, 765–77 (1986); *Dutton v. Int'l Harvester,* 504 N.E.2d 313, 316 (Ind.App. 1987); *Flory v. Silvercrest Industries,* 129 Ariz. 574, 633 P.2d 383, 387 (1981); *Professional Lens Plan v. Polaris Leasing,* 234 Kan. 742, 675 P.2d 887, 898 (1984) with *Shooshanian v. Wagner,* 672 P.2d 455 (Alaska 1983); *State v. Mitchell Constr. Co.,* 108 Idaho 335, 699 P.2d 1349, 1351–52 (1984) (Donaldson, C.J., concurring); *Old Albany Estates v. Highland Carpet Mills,* 604 P.2d 849 (Okl.1980).[3]

■ After reviewing these cases and the views of the commentators, the court holds that in order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and the defendant. Where an individual suffers personal injury from a defective product, public policy correctly dictates that the individual may recover from the ultimate wrongdoer who is better able to spread the costs of protecting itself from liability. Where, as here, a business entity suffers only economic losses because of a failure to perform the contract, the business entity's recourse should be against the other contracting party rather than some person or entity further along the chain of distribution. As the court stated in *Hole,* the buyer should pick his seller with care, particularly where both the buyer and the seller are sophisticated businesses. GESCO's motion for summary judgment on Mt. Holly's implied warranties count is granted.

■ This analysis is also applicable to express warranties made between GESCO and Riblet. Where the remote seller has made no warranties directly to the ultimate buyer, it cannot be expected to be obligated to the buyer. This rule is also supported by a majority of courts. White and Summers, *supra,* § 11–5 at 407. Had GESCO made affirmative representations directly to Mt. Holly by way of advertising, for example, the court might conclude differently. *See id.* at § 11–7. Here, however, no such representations were made, and the court need not reach that issue. Mt. Holly presents an affidavit by a Riblet executive stating that GESCO knew of the purpose for the engine. This affidavit does not demonstrate that GESCO assured Mt. Holly directly that the engine would meet the particular purpose Riblet described. GESCO's motion for summary judgment on Mt. Holly's express warranty count is granted.

In summary, the court grants summary judgment in favor of GESCO as to all tort claims and all contract theories expressed in Mt. Holly's complaint.

IT IS SO ORDERED.

---

**3.** Those cases holding that privity is not a requisite are based on the rationale that it is illogical and inefficient to require each buyer to "seek redress from his immediate seller until the actual manufacturer is eventually reached." *Old Albany Estates, supra.,* at 851–852. The argument has some appeal but represents a minority view and appears to be contrary to Michigan and New York holdings.