**Roger MICHELS, Plaintiff,**

v.

**MONACO COACH CORP., General R.V. Center, Inc., and Cummins Engine Co., Defendants**

**No. 03–71497.**

United States District Court, E.D. Michigan, Southern Division.

Dec. 31, 2003.

---

Agent Koostra was the one who knocked on Defendant's door.

Mark P. Romano, Esq., Garden City, MI, for plaintiff.

Michael Dolenga (Monaco Coach & General R.V. Center), Bingham Farms, MI, Scott T. Seabolt, Detroit, MI, for defendant.

## *OPINION*

DUGGAN, District Judge.

This lawsuit arises from Plaintiff's purchase of a new 2003 Dynasty 42 Dutchess motor home ("the motor home") on May 17, 2002, from Defendant General R.V. Center, Inc. ("General RV"), a motor home dealer. Holiday Rambler, an unincorporated division of Defendant Monaco Coach Corporation ("Monaco") manufactured the motor home body and chassis. Defendant Cummins Company ("Cummins") manufactured the motor home engine.[1] Soon after

---

1. According to Cummins, Plaintiff incorrectly has referred to the company as Cummins Engine Company, Inc. in his Complaint.

Plaintiff took delivery of the motor home in October 2002, several problems arose and he returned the vehicle to General RV for repair. After a number of these problems were not corrected to Plaintiff's satisfaction, Plaintiff filed suit in the Circuit Court for the County of Macomb, State of Michigan, on March 10, 2003. Defendants removed Plaintiff's Complaint to this Court pursuant to 28 U.S.C. Section 1441.

In his Complaint, Plaintiff asserts the following claims against all three defendants: breach of express warranty (Count I); breach of implied warranty of merchantability (Count II); revocation of acceptance (Count III); breach of written warranty under the Magnuson–Moss Warranty Act ("MMWA")(Count IV), 15 U.S.C. §§ 2301–2312; breach of implied warranty under the MMWA (Count V); violation of the Michigan Consumer Protection Act ("MCPA"), MICH. COMP. LAWS ANN. § 445.902 (Count VI); breach of contract (Count VII); and rescission of contract (Count VIII). Now before the Court is Monaco's motion for summary judgment.[2] Monaco seeks dismissal of all claims, except Plaintiff's claims alleging breach of express warranty and breach of written warranty under the MMWA.

In response to Monaco's motion, Plaintiff stipulated to the dismissal of his revocation claim. A hearing on Monaco's motion was held on December 4, 2003. At the hearing, Plaintiff also stipulated to the dismissal of his rescission claim against Monaco. Thus the only claims that the Court must address with respect to Monaco's motion for summary judgment are Plaintiff's claims for breach of implied warranty of merchantability (Count II), breach of implied warranty under the MMWA

(Count V), violation of the MCPA (Count VI), and breach of contract (Count VII).

## I. Background

Plaintiff alleges various defects in the motor home. According to Plaintiff, the motor home was out of service for at least one hundred and thirty days, at the time he filed his Complaint, as a result of these defects.

Plaintiff received separate, express limited warranties for the motor home and chassis from Monaco. Both limited warranties contained the following language:

**LIMITATION OF IMPLIED WARRANTIES**

**ANY IMPLIED WARRANTIES ARISING BY WAY OF STATE LAW, INCLUDING ANY IMPLIED WARRANTY OF MERCHANTABILITY AND ANY IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED IN DURATION TO THE TERM OF THIS LIMITED WARRANTY AND ARE LIMITED IN SCOPE OF COVERAGE TO THOSE PORTIONS OF THE [MOTOR HOME/CHASSIS] COVERED BY THIS LIMITED WARRANTY.** There is no warranty of any nature made by Warrantor beyond that contained in this Limited Warranty. No person has authority to enlarge, amend or modify this Limited Warranty . . .

*See id.* & Ex. B (bold in original).

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See*

---

**2.** When the motion for summary judgment was filed, General RV joined in the motion. Since that time, however, General RV has been dismissed from the lawsuit with prejudice. *See* October 8, 2003, Order Lifting Stay, Dismissing General RV and Compelling Discovery.

FED. R. CIV. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. Once the movant meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *See Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *See Liberty Lobby*, 477 U.S. at 252, 106 S.Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *See id.* at 255, 106 S.Ct. 2505. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *See id.*

## III. Applicable Law

### A. Breach of Implied Warranty of Merchantability (Count II)

Under Michigan's UCC, an implied warranty of merchantability warrants, among other things, that the goods pass without objection in the trade under the contract description and are fit for the ordinary purposes for which such goods are used. *Id.* MICH. COMP. LAWS ANN. § 440.2314(2)(a) & (c). In general, a seller may exclude or modify implied warranties through the use of a conspicuous writing containing expressions such as " 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id.* § 440.2316(3)(a). Section 440.2316 further provides that there is no implied warranty with regard to defects which an examination of the goods would have revealed to the buyer before entering into the contract, provided the buyer has the opportunity to examine the goods to the extent he or she desires. *Id.* § 440.2316(3)(b).

Monaco seeks dismissal of Plaintiff's breach of implied warranty claim, arguing that Section 440.2314 of Michigan's UCC states that an implied warranty is provided by a "seller" through a "contract" for sale and that it is not a seller under the statute. Monaco further argues that there is no privity between it and Plaintiff and Michigan requires privity in actions for breach of an implied warranty. Plaintiff responds that under Michigan law a buyer may pursue a breach of implied warranty claim against a remote manufacturer despite a lack of privity.

 In order to construe questions of state law, this Court must apply state law in accordance with the decisions of the Michigan Supreme Court. *Meridian Mutual Ins. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir.1999)(citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938)). If the Michigan Supreme Court has not addressed the issue,

the Court must ascertain how that court would rule, looking at decisions of "the state's lower courts, other federal courts construing state law, restatements of the law, law review commentaries, and other jurisdictions on the 'majority' rule in making this determination." *Id.* (citing *Grantham & Mann v. Am. Safety Prod.*, 831 F.2d 596, 608 (6th Cir.1987)). The Court may also consider relevant Michigan Supreme Court dicta in·its analysis. *Angelotta v. Am. Broad. Corp.*, 820 F.2d 806, 807 (6th Cir.1987)(citing *Bailey v. V. & O Press Co.*, 770 F.2d 601, 604 (1985)).

The Michigan Supreme Court has addressed the issue of whether vertical privity is required to pursue an implied warranty claim in only a few cases. In *Spence v. Three Rivers Builders & Masonry Supply, Inc.*, the court rejected the privity requirement for a claim alleging breach of an implied warranty that the goods—i.e. cinder blocks—were of merchantable quality. 353 Mich. 120, 90 N.W.2d 873 (1958). In the first several pages of his opinion, Justice Voelker strongly indicates that it is time for Michigan to rid itself of the "general rule" requiring privity, regardless of the type of injury suffered or the type of goods involved. *Id.* 353 Mich. at 126–130, 90 N.W.2d at 877–79. Courts have been reluctant to conclude that *Spence* clearly dispensed with privity, however, finding that the court subsequently "blurred its decision" by going on to suggest that a consumer's remedy should be grounded in negligence, not contract.[3] *See, e.g., Cova v. Harley Davidson Motor Co.*, 26 Mich. App. 602, 606, 182 N.W.2d 800, 802 (1970).

The Court finds that Justice Voelker's disdainful description of how the rule of privity was established should have extinguished any doubts as to whether the majority was abolishing the rule, whether in an action based in tort or contract:

> ... the doctrine of nonliability crept into our law from a casual dictum in an English case decided in 1842 (which, to add to the delightful irony, did not even involve a manufacturer), and how many American courts quickly fell upon this ancient dictim [sic] and blew it up into a 'general rule' to relieve manufacturers of all liability; of how our court then gradually grated upon it a bizarre cluster of 'exceptions,' ... which wondrously grew and grew until, in all truth—much like the boa constrictor swallowing itself— the exceptions devoured the rule; and how the English in due course sensibly scuttled their earlier dependence on this old dictum while many of our American courts remained tenacious in their devotion to the old 'rule' ...

*Id.* at 353 Mich. at 132, 90 N.W.2d at 879. Nevertheless, in this Court's opinion, any question of the *Spence* court's retention of privity as a legitimate defense should have been laid to rest by the Court's subsequent decisions.

Three years after *Spence*, the Michigan Supreme Court decided *Manzoni v. Detroit Coca–Cola Bottling Company*, 363 Mich. 235, 109 N.W.2d 918 (1961). Claiming that she was injured as a result of drinking coca-cola contaminated with a foreign substance, the plaintiff brought a claim against the manufacturer for breach of implied warranty. The plaintiff's claim clearly was based in contracts not torts, as one of the issues in the case was whether

---

**3.** In fact, the *Spence* court did not state that the consumer's remedy *only* should be grounded in negligence; rather the court stated that despite prior authority in Michigan for treating such actions as if they were explicitly grounded upon negligence, the consumer's remedy may be grounded in tort *or* contract. *Id.* 353 Mich. at 131, 90 N.W.2d at 879. As the court concluded, the trial court "should have permitted recovery either on a theory of negligence or implied warranty." *Id.* 353 Mich. at 135, 90 N.W.2d at 881.

there is a difference in these two theories of recovery. *Id.* 363 Mich. at 237–38, 109 N.W.2d at 919. The court affirmed the verdict for the plaintiff, concluding that she could bring an implied warranty action based in contract despite a lack of privity with the defendant. *Id.* 363 Mich. at 241, 109 N.W.2d at 922.

Quoting from a decision from the Supreme Court of New Jersey, the *Manzoni* court reasoned:

> The limitations of privity in contracts for the sale of goods developed their place in the law when marketing conditions were simple, when maker and buyer frequently met face to face on an equal bargaining plane and when many of the products were relatively uncomplicated and conductive to inspection by a buyer competent to evaluate their equality ... With the advent of mass marketing, the manufacturer became remote from the purchaser, sales were accomplished through intermediaries, and the demand for the product was created by advertising media. In such an economy it became obvious that the consumer was the person being cultivated.
>
> Manifestly, the connotation of 'consumer' was broader than that of 'buyer.' He signified such a person who, in the reasonable contemplation of the parties to the sale, might be expected to use the product. Thus, where the commodities sold are such that if defectively manufactured they will be dangerous to life or limb, then society's interests can only be protected by eliminating the requirement of privity between the maker and his dealers ...

*Id.* at 363 Mich. at 240, 109 N.W.2d at 921. The court went on to state that because of the growing pressure for consumer protection, "... the requirement of privity has been abandoned outright in many jurisdictions rather than by the use of fictions, thereby opening the door to the widespread use of the warranty theory." *Id.* at 363 Mich. at 241, 109 N.W.2d at 921–22. The court held that "[i]n this State we permit recovery in this type of case 'either on a theory of negligence, or implied warranty.'" *Id.* (citing *Spence*, 353 Mich. at 135, 90 N.W.2d at 874).

Despite this holding, courts addressing the privity issue with respect to goods other than those sold in the food and beverage area have ignored *Manzoni*, perhaps due to the court's specific reference to goods sold in the food and beverage area which, if defective, would be dangerous to life or limb.[4] *Manzoni*, 363 Mich. at 240, 109 N.W.2d at 921. In this Court's opinion, the *Manzoni* court did not intend for its holding to be limited to food and beverage cases. In its rationale for not requiring privity, the court stated:

> Today ... we have the facts of modern trade and commerce, centralized manufacturing operations in strategic areas complemented by regional or nationwide distribution networks, accompanied by advertising and assurances of quality directly aimed at the ultimate consumers. The result of the operation of these forces has been a marked change in legal theory on a wide front. The food and beverage area is but a small subdivision of a field much more comprehensive, involving the whole topic of products liability. [*Spence*, 353 Mich. 120, 90

---

4. Some courts also may have concluded that *Manzoni* merely followed the exception to privity that the Michigan Supreme Court earlier set forth in *Piercefield v. Remington Arms Company*, 375 Mich. 85, 133 N.W.2d 129 (1965). In *Piercefield*, the court clearly stated that privity had been abolished in Michigan in cases where plaintiffs suffer personal injuries as a result of a defective product.

N.W.2d 873] It ranges through areas of both contract and tort, from the liability of the manufacturer of a defective automobile wheel, *or cinder blocks* to that of a seller of an inflammable dress ... *Manzoni*, 363 Mich. at 239, 109 N.W.2d at 920–21 (emphasis added)(internal citations omitted).

Further support for the conclusion that *Manzoni* was not limited to goods sold in the food and beverage area is found in the Supreme Court's decision in *Hill v. Harbor Steel & Supply Corp.*, 374 Mich. 194, 132 N.W.2d 54, (1965). The *Hill* court expressly stated that its holding in *Manzoni* was not circumscribed:

Although the facts of *Manzoni* involve a product intended for human consumption, the Court's discussion of warranty and negligence is not confined to such products. Rather, it is general in nature, the principles of the opinion having equal applicability to all product liability cases ....

*Hill*, 374 Mich. at 204, 132 N.W.2d at 57; *see also Hill*, 374 Mich. at 219, 132 N.W.2d at 65 (O'Hara, J., concurring).

The majority in *Hill* also clearly stated that the exception to the privity requirement previously established by the court in the case of goods intended for human consumption "became the rule" in *Spence. Id.* 374 Mich. at 201–02, 132 N.W.2d at 56 (stating that *Spence* "held that lack of privity of contract should not bar plaintiff's suit on an implied warranty"). In his concurrence in *Hill*, Justice O'Hara, referring to *Spence's* discussion of whether the plaintiff should be allowed to recover on a negligence theory although she only asserted a breach of implied warranty claim, acknowledged that *Spence* "contained language that was not only unnecessary and unfortunate ... but that some of its language is simply bad law and ought to be expressly overruled." *Hill*, 374 Mich. at 219, 132 N.W.2d 54 (O'Hara, J., concurring). Justice O'Hara went on to state, however, that he "would reaffirm here what *Spence* really decided: lack of privity of contract is not a defense to an action by a purchaser for breach of an implied warranty of fitness ..." *Id.* Years later, the Michigan Supreme Court stated in *Jennings v. Southwood*, that it "eliminated the privity requirement in actions for breach of an implied warranty" in *Spence*. 446 Mich. 125, 132 n. 5, 521 N.W.2d 230, 234 n. 5.

The Sixth Circuit Court of Appeals has found that Michigan has abolished any privity requirement in implied warranty actions: "Michigan's rejection of the privity requirement in products liability cases is, as we see it, both sweeping and complete." *Reid v. Volkswagen of America, Inc.*, 512 F.2d 1294, 1298 (6th Cir.1975), abrogated on other grounds by *Parish v. B.F. Goodrich Co.*, 395 Mich. 271, 235 N.W.2d 570 (1975). The *Reid* court relied on the Michigan Supreme Court's decision in *Spence, Manzoni, Piercefield,* and *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974). Quoting the following language from the latter case, the court concluded that Michigan's rejection of privity applies to tort actions, as well as actions based on implied warranty:

Michigan's own jurisprudence records the categorical elimination of privity. This Court had previously extended abstracter liability consonant with the historical growth in reliance and use of abstracts and the corresponding changes in the law to known relying third-parties. Confronted now as of first impression with the question of abstracter liability to foreseeable relying third-parties, we have but to apply our own persuasive precedent of categorical elimination of privity to an analogous situation and we do so.

On the basis of *Three Rivers* and a plethora of jurisdictions in the United States a good case is made for abolishing contractual privity and permitting suit in "negligence or implied warranty" by any foreseeable third-party who would and does rely on the abstract. *Id.* (quoting *Williams*, 391 Mich. at 18, 215 N.W.2d at 154).

Citing cases from the Michigan Court of Appeals and the federal district courts in the eastern and western districts of Michigan subsequent to *Williams*, however, Monaco contends that Michigan's rejection of the privity requirement in implied warranty claims under the UCC is not clear. Rather, relying on the following cases, Monaco claims that Michigan has not abolished the privity requirement in implied warranty actions: *Auto Owners Insurance Company v. Chrysler Corporation*, 129 Mich.App. 38, 341 N.W.2d 223 (1983); *Henderson v. Chrysler Corporation*, 191 Mich.App. 337, 477 N.W.2d 505 (1991); *Mt. Holly Ski Area v. U.S. Electrical Motors*, 666 F.Supp. 115 (E.D.Mich.1987); *Watson v. Damon Corp.*, 2002 WL 32059736 (W.D.Mich.2002)(unpublished opinion); *Chiasson v. Winnebago Industries*, Case No. 01–74809 (May 18, 2002)(Steeh, J.)(unpublished opinion). Neither of the Michigan cases are persuasive. While the 2–1 majority in *Auto Owners* upheld the trial court's decision to dismiss the plaintiff's claim for breach of express and implied warranties because the parties did not have a contractual relationship, the court provided no explanation for its conclusion

which contradicted its earlier decision in *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 182 N.W.2d 800 (1970)(holding that purchaser could maintain an implied warranty claim against remote manufacturer despite lack of privity).[5] *Auto Owners*, 129 Mich.App. at 43, 341 N.W.2d at 224–25. The primary focus of the *Auto Owners'* decision was whether the rule set for in *McGhee v. GMC Truck and Coach Division*, 98 Mich.App. 495, 296 N.W.2d 286 (1980)—i.e. the economic loss doctrine—should apply where there is no contractual relationship between the plaintiff and the defendant. *Henderson* only involved the issue of whether privity is required to invoke the UCC's revocation of acceptance as a remedy. *Henderson*, 191 Mich.App. at 339, 477 N.W.2d at 506. Given the *Henderson* court's reliance on the plain language of the revocation provision to conclude that privity is required—that is, that the provision allows a buyer to revoke his acceptance and that acceptance is inextricably between a buyer and his immediate seller-the Court finds its holding inapplicable to a claim for breach of implied warranty.

In *Mt. Holly Ski Area*, the district court discussed *Piercefield* and concluded that the Michigan Supreme Court intended to create a definite rule in its decision and end privity only where an innocent bystander is injured. 666 F.Supp. at 118. The court did not address the language in *Spence* which, at the very least, suggested that the Michigan Supreme Court was abolishing privity altogether.[6]

---

5. Oddly, Judge Gillis joined the majority opinions in *Cova* and *Auto Owners*. Judge Gillis subsequently acknowledged, however, that although he voted with the majority in *Auto Owners*, he would reconsider his position were it necessary to resolve the case that was then before the court. *Great Am. Ins. Co. v. Paty's Inc.*, 154 Mich.App. 634, 642 n. 1, 397 N.W.2d 853, 857 n. 1 (1986).

6. The district court only discussed *Spence* in a footnote with respect to *Cova*, noting that the Michigan Court of Appeals relied heavily on *Spence* to conclude that privity no longer was required. *Mt. Holly Ski Area*, 666 F.Supp. at 119 n. 2. Citing only two sentences from the Michigan Supreme Court's opinion, the district court concluded that the *Spence* court held that the plaintiff's claim sounded in neg-

Finding a split in the Michigan Court of Appeals based on *Cova*, on one hand, and *Auto Owners* and *N. Feldman & Son v. Checker Motors Corporation*, 572 F.Supp. 310 (S.D.N.Y.1983)(interpreting Michigan law) [7], on the other hand, the *Mt. Holly Ski Area* court turned to a survey of the states by two commentators who concluded that the majority of states still require privity in order for a buyer to pursue a breach of implied warranty claim against a remote manufacturer. More recently, however, the same commentators have concluded that a growing number of courts now allow non-privity plaintiffs to recover for economic loss under an implied warranty theory. *See* White & Summers, Uniform Commercial Code § 11–5 (4th Ed.1995); *see also* 3 Anderson U.C.C. § 2–314:378 (December 2003)(concluding that "[t]he modern trend is to abolish the requirement of privity of contract.") The Court finds Defendants' reliance on *Watson* [8] and *Chiasson* unpersuasive.

■ Thus the Court concludes that vertical privity no longer is required in Michigan to pursue a breach of implied warranty claim against a remote manufacturer. Accordingly, Monaco's motion for summary judgment as to Count II of Plaintiff's Complaint is denied.

### B. Breach of Implied Warranty Under the Magnuson–Moss Warranty Act (Count V)

The MMWA allows a consumer "who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation [under the Act], or under a written warranty, implied warranty, or service contract" to file in any state or federal district court a suit for damages and other legal and equitable relief. 15 U.S.C. § 2310(d)(1).

■ The MMWA defines an "implied warranty" as "an implied warranty arising under State law ... in connection with the sale by a supplier of a consumer product." 15 U.S.C. § 2301(7). The Michigan courts have not interpreted this section. Those courts which have analyzed this definition, however, have concluded that the phrase "arising under" indicates that the obligations of the warranty are solely the creation of state law, including whether privity is required. *See, e.g., Abraham v. Volkswagen*, 795 F.2d 238, 248–49 (2d Cir.1986)(holding that "[b]oth the statutory language and [the statute's] legislative history ... indicate that Congress did not intend to supplant state law with regard to privity in the case of implied warranties"); *Walsh v. Ford Motor Co.*, 588 F.Supp. 1513, 1525 (D.D.C.1984); *Feinstein v. Firestone Tire and Rubber Co.*, 535 F.Supp. 595, 605 n. 13 (S.D.N.Y.1982); *Miller Auto Leasing Co. v. Weinstein*, 189 N.J.Super. 543, 461 A.2d 174 (1983).

Monaco moves to dismiss Plaintiff's claim alleging breach of implied warranty under the MMWA, arguing that Plaintiff has no state law implied warranty claim because of lack of privity. *See* Reply at 14 ("... any claim for breach of warranty ... pursuant to the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301, is dependent on a valid breach of warranty cause of action.") Because the Court has concluded that vertical privity no longer is required under Michigan law to pursue a breach of implied warranty claim, the Court concludes that

---

ligence and not contract. *Id.* This Court disagrees with this conclusion.

**7.** In *Consumers Power Company v. Mississippi Valley Structural Steel Co.*, 636 F.Supp. 1100, 1108–09 (E.D.Mich.1986), the court held that

*N. Feldman & Son, Ltd v. Checker Motors Corp.* was "of no persuasive value because the court misinterpreted Michigan law ..."

**8.** The district court in *Watson* relied solely on *Mt. Holly Ski Area.*

Monaco's motion for summary judgment with respect to Plaintiff's MMWA claim based on a breach of implied warranty theory should be denied.

### C. Violation of the Michigan Consumer Protection Act (Count VI)

■ The MCPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . ." MICH. COMP. LAWS ANN. § 445.903. Monaco seeks dismissal of Plaintiff's MCPA claim, arguing that Plaintiff has not pled his claim with specificity as required by Rule 9(b) of the Federal Rules of Civil Procedure. Rule 9(b) provides in relevant part: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Deceptive trade practices, however, are not the only conduct prohibited by the MCPA. In fact, at the hearing on Monaco's motion, Plaintiff indicated that its MCPA claim is not premised on fraud, but rather on Monaco's breach of its express and implied warranties. *See also* Compl. ¶ 56. According to Plaintiff, this constitutes a failure to provide promised benefits, in violation of subsection y of the MCPA. *See* MICH. COMP. LAWS ANN. 445.903(1)(y). Plaintiff asserted at the hearing that this is the sole basis for its MCPA claim. Monaco responded that this representation was sufficient to appraise it of Plaintiff's claim. The Court therefore concludes that Monaco has not set forth a basis for disposing of Count VI of Plaintiff's Complaint.

### D. Breach of Contract (Count VII)

In his breach of contract claim, Plaintiff alleges that Monaco has failed to repair or adjust all parts founds to be defective in the motor home, as required by the manufacturer's express limited warranty. Plaintiff does not allege any additional breach of any other contract. As Plaintiff's breach of contract claim merely restates his breach of warranty claim, the Court grants Monaco's motion for summary judgment of this claim.

### IV. Conclusion

The Court concludes that vertical privity no longer is required under Michigan law to pursue an implied warranty claim. Therefore, Monaco's motion for summary judgment with respect to Count II of Plaintiff's Complaint is denied. As Count V of Plaintiff's Complaint depends on his state law breach of implied warranty claim, Monaco's motion to dismiss Plaintiff's MMWA claim based on breach of implied warranty also is denied. As Plaintiff's breach of contract claim (Count VII) merely restates the allegations in his breach of warranty claim, it is dismissed. Finally, the Court finds that Plaintiff has sufficiently pled his MCPA claim (Count VI) and that Monaco has not set forth any other reason why this claim should be dismissed.

An Order consistent with this Opinion shall issue.