**Robert DUCHARME and Patricia Ducharme, Plaintiffs,**

v.

**A & S RV CENTER, INC., Fleetwood Motor Homes of Pennsylvania, Inc., Cummins Engine Company, Inc., Oxford Bank and Freightliner Custom Chassis Corporation, Defendants.**

No. 03–70729.

United States District Court,
E.D. Michigan,
Southern Division.

Jan. 16, 2004.

John Modrzejewski, Rochester, MI, for Plaintiffs, Counter Defendants.

Edward M. Kronk, Butzel Long, Scott T. Seabolt, Foley & Lardner, Anthony A. Agosta, Elizabeth J. Basten, Eric E. Reed, Clark Hill, Detroit, MI, for Defendants.

Anissa C. Hudy, Michael G. Cruse, Howard & Howard, Bloomfield Hills, MI, Jenice C. Mitchell, Foley & Lardner, Detroit, MI, for Defendants, Counter Claimant and Cross Claimant.

Timothy M. Labadie, Butzel Long, Detroit, MI, for Defendants and Cross Defendant.

## MEMORANDUM AND ORDER

COHN, District Judge.

This is a breach of warranty case arising out the purchase of a motor home. Plaintiffs Robert Ducharme and Patricia Ducharme, husband and wife, claim the motor home is defective. Defendants, and their respective roles regarding the motor home are as follows:

- A & S RV Center (A & S)    sold the motor home

- Fleetwood Motor Homes (Fleetwood)    manufactured the coach portion of the motor home

- Oxford Bank    financed the motor home

- Freightliner Custom Chassis Corp. (FCCC)    manufactured the chassis

- Cummins Engine Company (Cummins)    manufactured the engine

The Ducharmes bring the following claims against all of the defendants: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) breach of written warranty under the Magnuson–Moss Warranty Act (MMWA), 15 U.S.C. § 2301, (4) breach of Implied warranty under the MMWA, (5) violation

1. The Ducharmes have agreed to dismiss this claim against all defendants. Thus, the substance of this claim will not be addressed.

2. FCCC moves to dismiss counts 2 and 4 (breach of implied warranty) under Fed. R.Civ.P. 12(b)(6). Because FCCC presents matters outside of the pleadings and frames its arguments under summary judgment standards, FCCC's entire motion will be analyzed under Fed.R.Civ.P. 56.

of Michigan Consumer Protection Act, and (6) shaken faith.[1]

Before the Court are defendants' motions for summary judgment, filed as follows: (1) A & S, Fleetwood, and Oxford Bank's motion for summary judgment, (2) FCCC's motion for summary judgment,[2] and (3) Cummins' motion for summary judgment. For the reasons that follow, the motions will be granted and this case will be dismissed.

### I. Background

The material facts as gleaned from the parties' papers follow:[3]

#### A. General

On July 27, 1999, Robert Ducharme signed a purchase agreement for a 1999 Bounder Motor home. The motor home cost approximately $120,000.00. The motor home was financed through Oxford Bank. The financing agreement is signed by both Robert and Patricia Ducharme. Title to the motor home is in Robert Ducharme's name only.

The Ducharmes say that the motor home has been in for service on at least 21 occasions and out of service for more than 285 days since its purchase, 107 of those days were during the first year of ownership.

The Ducharmes list some 19 parts that were replaced, ranging from relatively minor parts such as reinforcing the bracket for the TV to major parts such as replacing the engine block.[4] They also list 26

3. All parties complied with the Court's motion practice guidelines for a motion for summary judgment.

4. In May of 2001, Robert Ducharme's father took the motor home on a trip to Montana. On the way, the engine began experiencing problems which resulted from a cracked engine block. As will be explained, Cummins repaired the engine under warranty. The Ducharmes, however, seek damages from defendants for airline and other expenses incurred as a result of having to return to

parts of the motor home that have been worked on because of damage or defect. They identify 4 of the most significant problems as follows: (1) the engine—noting the cracked engine block in 2001 (see n. 4) (2) brakes—noting a brake failure in March of 2003, (3) chassis—noting that the rear axle is not properly aligned, causing it to "dog track," (4) coach—noting "current" problems with the interior area of the motor home such as doors that will not close properly and the jacks failing. The Ducharmes have had the motor home inspected by a mechanic, Nick Bastian, whom they designate an expert witness, who states in his affidavit that the motor home has the following problems:

1. Rear end alignment
2. Various oil leaks
3. Oil/rear axle fluids frm differential dig area noted
4. Front leveling jacks not working, suspect solinoid
5. Sliding closet doors do not roll properly after coach is driving
6. Right side motor mounts appear new—cannot determine why they had to be replaced

The motor home has over 34,000 miles on it. The Ducharmes and their family have taken at least 18 trips in it, including trips to New Mexico, Florida, Nevada, and most recently to South Carolina in 2003. However, Patricia Ducharme says she no longer will ride in the motor home because she does not feel it is safe.

### B. The Warranties

At the time of purchase, the Ducharmes were furnished a copy of the purchase agreement from A & S. They were also given warranty documents from the manufacturers: Fleetwood, FCCC, and Cummins which set forth express limited warranties. Relevant portions of the purchase agreement and warranty documents follow.

### 1. A & S [5]

The front page of the purchase agreement states, in all capital letters:

NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON THE REVERSE SIDE

The reverse side of the purchase agreement contains the following (also in capital letters and in bold type):

10. EXCLUSION OF WARRANTIES. I UNDERSTAND THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDE BY YOU FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE GOODS SOLD. I UNDERSTAND THAT YOU MAKE NO WARRANTIES WHATSOEVER REGARDING THE UNIT OR ANY APPLIANCE OR COMPONENT CONTAINED THEREIN, EXCEPT THAT AS MAY BE REQUIRED UNDER APPLICABLE STATE LAW.

11. MANUFACTURERS WARRANTIES. I UNDERSTAND THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT … YOU WILL GIVE ME COPIES OF ALL WRITTEN WARRANTIES SUPPLIED BY THE MANUFACTURERS. DELIVERY BY YOU TO ME OF

Michigan and leave the motor home for repair.

**5.** Oxford Bank's rights and liabilities are derivative of A & S; thus, Oxford Bank's role will not be separately addressed in this memorandum.

THE WARRANTY BY THE MANUFACTURER OF THE UNIT PURCHASED OR ANY APPLIANCES OR COMPONENTS DOES NOT MEAN YOU ADOPT THE WARRANTY(S) OF SUCH MANUFACTURERS. I ACKNOWLEDGE THAT THESE EXPRESS WARRANTIES MADE BY THE MANUFACTURERS HAVE NOT BEEN MADE BY YOU EVEN IF THEY SAY YOU MADE THEM OR SAY YOU MADE SOME OTHER EXPRESS WARRANTY. YOU ARE NOT AN AGENT FOR THE MANUFACTURERS FOR WARRANTY PURPOSES EVEN IF YOU COMPLETE, OR ATTEMPT TO COMPLETE REPAIR FOR THE MANUFACTURERS.

12. LIMITATION ON DAMAGES. IF THE MANUFACTURERS' WARRANTY IS LIMITED TO REPAIR OR REPLACEMENT AND SUCH WARRANTY FAILS BECAUSE OF ATTEMPT AT REPAIR ARE NOT COMPLETED WITHIN A REASONABLE TIME OR THE MANUFACTURERS HAS (HAVE) GONE OUT OF BUSINESS, I AGREE, THAT IF I AM ENTITLED TO ANY DAMAGES AT ALL AGAINST YOU, MY DAMAGES ARE LIMITED TO THE LESSER OF EITHER THE COST OF NEEDED REPAIRS OR REDUCTION IN THE MARKET VALUE OF THE UNIT CAUSED BY THE LACK OF REPAIRS. IN ANY CASE, YOU WILL NOT BE REQUIRED TO PAY ME ANY INCIDENTAL OR CONSEQUENTIAL DAMAGES. I ALSO AGREE THAT ONCE I HAVE ACCEPTED THE UNIT, EVEN THOUGH THE MANUFACTURER(S) WARRANTY DOES NOT ACCOMPLISH IT'S [SIC] PURPOSE, THAT I CANNOT RETURN THE UNIT TO YOU AND SEEK A REFUND FOR ANY REASON.

### 2. Fleetwood

Fleetwood furnished a one-year/three-year limited warranty. It provides in relevant part:

1. For all defects (other than structural) the warranty extends for a period of one year from such date or until the unit has received 15,000 total miles of use as determined by the mileage shown on the odometer (whichever occurs first).

2. For structural defects, 3 years; structural defects are limited to the following: roof structure, sub-floor structure, exterior walls, interior walls and ceilings.

. . .

The owner is responsible for normal maintenance as described in the Owner's Manual; however minor adjustment (such as adjustments to the interior or exterior doors, LP regulator pressure, cabinet latches, TV antennae control, etc.) will be performed by the dealer during the first 90 days of warranty coverage. Thereafter, such adjustments are the responsibility of the owner as normal maintenance unless required as a direct result of repair or replacement of a defective part under the warranty.

. . .

**This warranty does not cover** (bold in original):

1. The automotive system (including the chassis and drive train), tires, and batteries, which are covered by the separate warranties of the respective manufacturers of these components.

. . . .

6. Transportation to and from dealer or Fleetwood Center location, loss of time, inconvenience, commercial loss, loss of use, towing charges, bus fares, vehicle rental, incidental charges such as telephone calls or hotel bills, or other incidental or consequential damages.

### 3. FCCC

FCCC furnished a 2 year or 24,000 miles warranty for all of the components of the basic chassis. The chassis drive train components are warranted for 3 years or 36,000 miles and the frame rails and cross members are warranted for 5 years or 100,000 miles.

The FCCC warranty manual contains the following relevant provisions:

[FCCC] warrants that each new Freightliner chassis, with the exception of certain excluded components or parts, will be manufactured to the specifications agreed upon and will be free from defects in material and workmanship which appear under normal use and service, subject to different time and distance limitations for specific components and parts as set forth in the appropriate graphs.

. . . .

FCCC's sole obligation shall be the repair or replacement, at FCCC's option, of any defective component or part thereof. All components and parts are covered by the Basic Chassis Warranty unless specifically covered by other descriptions, or otherwise excluded herein. Such repair or replacement shall be without costs to Purchaser when performed within the time or distance limits whichever occurs first.

The foregoing limited warranty is exclusive and in lieu of all other warranties whether written, oral or implied, including but not limited to any warranty of merchantability or fitness for purpose.

This limited warranty specifically excludes any other warranties or conditions provided by law, whether statutory or otherwise.

. . .

The foregoing limited warranty shall be the Purchaser's sole and exclusive remedy against FCCC. . . .

FCCC's liability to a Purchaser . . . . shall not exceed the prices to Purchaser allocable to the part of such chassis which gives rise to the claim, and in no event shall it exceed the purchase price of the chassis. **In no event shall FCCC be liable for special or consequential damages including, but not limited to, injuries to persons or damage to property, loss of profits or anticipated profits, or loss of chassis use.** (Bold in original).

### 4. Cummins

Cummins furnished the following warranty:

Base Engine Warranty

The Base Engine Warranty covers any failures of the Engine which result, under normal use and service, from a defect in material or factory workmanship (Warrantable Failure). This coverage begins with the sale of the Engine by Cummins and continues for five years or 100,000 miles, whichever occurs first, from the date of delivery of the Engine to the first user.

. . . .

This warranty on Consumer Products in the United States is a LIMITED warranty CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. (all caps in original)

. . . .

Owner is responsible for non-Engine repairs and for "downtime" expenses, passenger delays, fines, all applicable taxes, all business costs and other losses resulting from a Warrantable Failure.

Cummins is not responsible for failures or damage resulting from what Cummins determines to be abuse or neglect . . . .

This warranty does not apply to accessories which bear the name of another company.

. . . .

CUMMINS DOES NOT COVER WEAR OR WEAROUT OF COVERED PARTS.

CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES.
THESE WARRANTIES AND THE EMISSION WARRANTY SET FORTH HEREINAFTER ARE THE SOLE WARRANTIES MADE BY CUMMINS IN REGARD TO THESE ENGINES, CUMMINS MAKES NO OTHER WARRANTIES, EXPRESS OR IMPLIED, OR OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. (all caps in original)

. . . .

Failures, other than those resulting from defect in material or factory workmanship, are not covered by this warranty.

. . . .

CUMMINS IS NOT RESPONSIBLE FOR INCIDENTAL OR CONSEQUENTIAL DAMAGES. (all caps in original).

## II. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a trier of fact or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir. 1995). Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir.2001).

## III. Analysis

Because defendants have moved for summary judgment on all of the Ducharme's claims, each claim is analyzed as to all of the defendants.

### A. Patricia Ducharme

As an initial matter, the parties spend some time arguing over whether Patricia Ducharme is a "purchaser" of the motor home since she only signed the financing agreement. It appears that Robert Ducharme, who signed the purchase agreement and is the title holder, is the purchaser of the motor home and the only one for purposes of bringing claims against defendants. Patricia Ducharme signed only the financing statement. For simplicity, however, the Court will continue to refer to plaintiffs as the Ducharmes.

## B. Express Warranty Claim

### 1. General

■ The Michigan statute on breach of express warranties, M.C.L. § 440.2313, provides in part:

(1) Express warranties by the seller are created as follows:

(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

### 2. A & S

A & S argues that the Ducharmes have not made out a claim for breach of express warranty because the purchase agreement specifically disclaimed any warranties, express or implied. The Ducharmes argue that a "delivery checkout form" constitutes an express warranty. This argument lacks merit. The delivery checkout form is a Fleetwood document, not an A & S document and it tracks the language in the Fleetwood warranty regarding dealer repairs for 90 days for "minor adjustments." The form also states that "Items in the above checklist marked by a * are included in the dealer adjustments as defined in the warranty section of the Fleetwood owner-care manual. These adjustments and checks are provided to the original purchaser by the selling dealer for 90 days

after purchase." The delivery checklist makes no representations concerning the condition of the motor home. Thus, it does not constitute an express warranty. *See Klanseck v. Anderson Sales,* 136 Mich. App. 75, 86, 356 N.W.2d 275 (1984)(holding that a delivery checklist from motorcycle dealer did not constitute an express warranty for condition of tires and wheels).

Moreover, even if the delivery checklist could be said to be an express warranty, the A & S warranty disclaimer states that it is not an agent for a manufacturer and expressly states that any manufacturer warranties are not A & S warranties. In short, A & S provided no express warranty. Thus, A & S is entitled to summary judgment on the Ducharme's express warranty claim.

### 3. Fleetwood

■ It is undisputed that Fleetwood made an express warranty on the coach portion of the motor home. However, the warranty for all defects, other than structural, expired after one year. The Ducharmes argue that because the coach of the motor home "had many problems" and was in for repair many times during the warranty period establishes a breach of warranty. However, the fact that the motor home was previously repaired does not establish a breach of warranty. *See Fargo Machine & Tool Co. v. Kearney & Trecker Corp.,* 428 F.Supp. 364 (E.D.Mich.1977) (holding that it is inevitable that a complex product will require some service and that fact alone does not establish a breach of warranty).

■ In addition, although the Ducharmes previously listed a number of complaints about the coach, they now identify only two current problems: (1) the wardrobe sliding doors and (2) the leveling jacks.[6] As Fleetwood points out, however,

---

**6.** In their complaint, the Ducharmes also cite (1) the entry doors and (2) the gas shut off valve. They do not refer to these items in response to Fleetwood's motion or offer any argument on them.

any warranty on these items has long expired. Moreover, even if the warranty was still good, the wardrobe doors and the entry door are "adjustment" issues which were excluded from the warranty as part of normal maintenance. Overall, the Ducharmes have failed to make out a breach of express warranty claim against Fleetwood.

### 4. FCCC

FCCC argues that all of the Ducharme's concerns with the chassis have been remedied and therefore there is no viable breach of express warranty claim. The motor home was in for service for chassis related problems six times. The first chassis concern was on October 9, 1999 because the ABS light would not go out. The light was replaced under warranty. The second concern was on June 1, 2000 when the oil pressure gauge was not working. The gauge was replaced under warranty. The third concern was on March 7, 2001 when the left rear shock disintegrated. The shock was replaced under warranty. The fourth concern was on June 6, 2001 when the alternator was damaged. It was repaired but the Ducharmes never contacted FCCC and requested that the repair cost be covered by the warranty. The fifth concern was on March 14, 2002 when the motor home was "dog tracking." The rear axle was realigned. The Ducharmes contacted FCCC to request that the expense be covered under warranty. FCCC covered the repair cost as "good will" because the basic warranty on the chassis has expired. Finally, on April 8, 2003, the motor home had a broken fitting on the air dryer. This item was not covered by the warranty because the motor home was beyond the 2 year 25,000 basic chassis warranty.

FCCC says that in all of the above instances, the motor home was properly repaired. FCCC also points out that it had the motor home inspected by a Floyd Farabaugh, a former FCCC employee, who states in his affidavit that the motor home functions properly.

The Ducharmes currently complain about two problems with the chassis. First, on March of 2003, the brakes failed. Second, the motor home is still dog tracking. Neither of these current problems, however, can sustain a claim for breach of express warranty. These problems fall under the 2 year basic chassis warranty, which expired in July of 2001. Moreover, as with their claim against Fleetwood, the fact that the motor home had to be repaired does not establish a breach of warranty. *See Fargo Machine, supra.*

### 5. Cummins

■ Cummins says that it remedied the engine problem—the cracked engine block—and covered the cost in accordance with the express warranty. It also says that to the extent that the Ducharmes complain that the motor home leaks oil, Cummins is ready and willing to repair the oil leak under the warranty. Thus, Cummins says that the Ducharmes have no breach of express warranty claim because the engine conforms to the warranty and the Ducharmes have suffered no damages.

The Ducharmes argue that the engine is still having problems—oil leaking—and that they did suffer damages from the engine block being cracked in the form of travel and other expenses in having to return to Michigan without the motor home.

■ Cummins' argument is well taken. Again, the fact that the engine block was cracked, certainly a significant problem but a problem that was repaired under the warranty, does not establish a breach of warranty. Moreover, Cummins is willing to repair the engine leak under warranty. Finally, to the extent that the Ducharmes claim damages beyond the repair costs of the engine, such expenses, representing

incidental and consequential damages, were expressly disclaimed in the warranty. Cummins is therefore entitled to summary judgment on this claim.

Overall, the Ducharmes have not made out a breach of express warranty claim against any of the defendants.[7]

### C. Implied Warranty Claim

#### 1. General

■ The Ducharmes claim that all of the defendants breached the implied warranties of merchantability under M.C.L. § 440.2314. M.C.L. § 440.2314(1) states: "Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." This implied warranty may, however, be excluded. M.C.L. § 440.2316(2) states:

> to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

#### 2. A & S

A & S argues that it properly disclaimed any warranties to the Ducharmes. The Ducharmes argue that the disclaimer is not valid.

A & S's argument is well taken. The purchase agreement set forth above clearly disclaims any warranties, express or implied. The purchase agreement contains the necessary language to exclude implied warranties by A & S of merchantability under Michigan law. The next question is whether the disclaimer is conspicuous. M.C.L. § 440.1201(10); *see also Krupp PM Eng'g, Inc. v. Honeywell, Inc.*, 209 Mich.App. 104, 107, 530 N.W.2d 146 (1995). In *Krupp*, the Michigan Court of Appeals evaluated a two-sided contract similar to that at issue here. The court of appeals found that the term was not conspicuous because the only statements drawing the purchaser's attention to the limitations were: (1) the phrase "The Standard Terms and Conditions on the reverse side are part hereof" written on the bottom of the front page in small italicized print; and (2) the lack of capitalization of the "pivotal statement of limitation" on the back-side of the contract. *Id.* at 108–09, 530 N.W.2d 146.

Here, however, the notice to purchasers of warranties is written in all capital letters in contrasting color on the front of the document. On the back side of the purchase agreement, the disclaimer of the warranty of merchantability is capitalized and in bold print. Thus, the disclaimer was in writing and conspicuous. A & S is therefore entitled to summary judgment on the Ducharmes' claims for breach of implied warranties of merchantability and fitness.

The Ducharmes make an interesting argument with regard to A & S and the

---

7. The Ducharmes argue that summary judgment is inappropriate because the district court in *Watson* allowed the plaintiffs' express warranty claim against the manufacturer of the motor home and the manufacturer of the chassis (incidentally, also FCCC) to continue. The district court's ruling was based on the facts of that case, which are not similar. No-

tably, FCCC did not move for summary judgment on the express warranty claim in *Watson*. Although the motor home manufacturer did move for summary judgment it appears that, unlike in this case, the express warranty from the motor home manufacturer had not expired.

implied warranty. They argue that the disclaimer on the purchase agreement is not valid against Patricia Ducharme because she did not sign it. This argument lacks merit. Patricia Ducharme was not the purchaser. As A & S points out, she cannot have it both ways. She either was a purchaser, in which case she is bound by the disclaimers, or she was not a purchaser, in which case she cannot assert any claims against defendants. The fact that she agreed to be jointly liable with her husband for payment on the motor home does not make her a purchaser.

3. Fleetwood, FCCC and Cummins

■ Fleetwood, FCCC, and Cummins all make the same argument for summary judgment on the Ducharme's implied warranty claim. They argue that this claim cannot stand because they are not in privity of contract with the Ducharmes. Another federal district court recently addressed this issue in an unpublished opinion (cited and relied on by all defendants). There the court stated:

"[I]n order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and the defendant." *Mt. Holly Ski Area v. U.S. Elec. Motors,* 666 F.Supp. 115, 120 (E.D.Mich. 1987). The *Mt. Holly* court recognized that the Courts of Appeals of Michigan were split on whether privity is required to state a claim for breach of implied warranties where there is no allegation of personal injury. *Id.* at 118–20; compare *Auto Owners Ins. Co. v. Chrysler Corp.,* 129 Mich.App. 38, 341 N.W.2d 223 (1983) (finding privity required), and *N. Feldman & Son Ltd. v. Checker Motors Corp.,* 572 F.Supp. 310, 315 (S.D.N.Y. 1983) (applying Michigan law and finding privity required), with *Cova v. Harley Davidson Motor Co.,* 26 Mich.App. 602, 608–10, 182 N.W.2d 800, 804–05

(1970) (finding privity not required). However, following its extensive review of case law and scholarly commentary, the *Mt. Holly* court concluded that, under the modern trend, privity is required. *Mt. Holly,* 666 F.Supp. at 120 (citing 1 James J. White & Robert S. Summers, Uniform Commercial Code § 11–5 (2d ed.1980)). Plaintiffs have not brought to the Court's attention any Michigan case subsequent to *Mt. Holly* which challenges the holding in *Mt. Holly*. *Mt. Holly* appears to have the correct analysis in holding that in order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and the defendant: *Mt. Holly,* 666 F.Supp. at 120. Thus, to avoid summary judgment, Plaintiffs must establish that they were in privity with Damon and FCCC.

*Watson v. Damon Corp.,* 2002 WL 32059736, *5–6 (W.D.Mich. Dec.17, 2002) (unpublished). Another judge in this district, also after conducting a thorough analysis of Michigan law, followed *Mt. Holly* and held that privity is required. See *Chiasson v. Winnebago,* 01–CV–74809 (E.D.Mich. May 16, 2002) (unpublished).

The decisions of the district court in *Mt. Holly, Watson, Chiasson* correctly state the law. Privity is required in order for a consumer purchaser to make out a claim for breach of implied warranty against a remote manufacturer. The fact that an express warranty runs from the remote manufacturer to the purchaser does not create the requisite privity.

■ Here, it is uncontested that the Ducharmes were not in privity with Fleetwood, FCCC or Cummins. The Ducharmes have not shown that they ever discussed particular uses for their motor home with any of these defendants or that

any of these defendants made specific representations to them regarding performance or use of the motor home. Accordingly, Fleetwood, Freightliner and Cummins are entitled to summary judgment on the Ducharmes's claims for breach of the implied warranty of merchantability.

### D. MMWA

#### 1. General

The Ducharmes also claim that defendants have breached the MMWA, 15 U.S.C. § 2308. The MMWA "serves to *supplement state-law* implied warranties only by prohibiting their disclaimer in certain circumstances," specifically when "the supplier disclaims an implied warranty while either making a written warranty or entering into a service contract." *Rokicsak v. Colony Marine Sales & Serv., Inc.*, 219 F.Supp.2d 810, 817–18 (E.D.Mich.2002) (emphasis in original) (applying Michigan law). "The [MMWA] is based upon the premise that suppliers of consumer goods vigorously use written express warranties as advertising and merchandising devices. If they are to be so used, they must meet federal standards in terms of disclosure and remedies provided to an aggrieved consumer. Under the [MMWA], no seller is forced to give an express written warranty, but if one is offered, it must comply with the standards set forth in the law." 59 A.L.R. Fed. 461, 1982 WL 198741 (1982).

"The MMWA was promulgated to increase consumer rights and protections by imposing minimum standards for manufacturers' warranties and by providing various avenues for consumer redress." *Walsh v. Ford Motor Co.*, 627 F.Supp. 1519, 1522 (D.D.C.1986). Section 110(d) of the MMWA provides, in pertinent part, that

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
>
> (A) in any court of competent jurisdiction in any State or the District of Columbia; or
>
> (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

#### 2. A & S

A & S did not offer an express warranty and disclaimed all implied warranties, and specifically stated that any manufacturer's warranty is that made by that manufacturer only." Although A & S provided the Ducharmes with copies of Fleetwood, FCCC and Cummin's express limited warranties, it did not adopt them or enter into a service contract with Plaintiffs for repair of the motor home. *See id.* at 818 ("The federal MMA does not revive plaintiff's state law breach of implied warranty claims, nor does it create law regarding the adoption of third-party warranties in Michigan."). Thus, the MMWA does not apply to A & S and therefore it is entitled to summary judgment on this claim.

#### 3. Fleetwood, FCCC, and Cummins

The MMWA is also inapplicable to Fleetwood, FCCC, and Cummins. As stated above, the Ducharmes were not in privity with these defendants at the time of sale and as a result, the Ducharmes could not make out an implied warranty claim against them. Because the MMWA merely limits an express warranter or service contract provider from disclaiming certain implied warranties, Fleetwood, FCCC, and Cummins cannot be prohibited from disclaiming warranty obligations that

never existed. Moreover, because the Ducharmes do not have a valid claim against defendants for violation of an express warranty, this claim also fails. Accordingly, Fleetwood, FCCC, and Cummins are entitled to summary judgment on this claim.

### E. Revocation of Acceptance

#### 1. General

■ Revocation under Michigan law is stated at M.C.L. § 440.2608 which provides:

(1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

(a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

(b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

(3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

The Ducharmes have agreed to drop this claim against Fleetwood, FCCC and Cummins.[8] Thus, this claim is asserted against only A & S.

#### 2. A & S

A & S argues that the claim falls because it is not adequately pled and because A & S properly disclaimed any warranties. A & S also says that the purchase agreement specifically states that the motor home cannot be returned for any reason. A & S argues that its only obligation was to deliver the motor home which it did. A & S essentially argues that the disclaimer of all warranties in the purchase agreement prevents a finding that the motor home was non-conforming to the contract.

The district court in *Watson* addressed this issue, stating:

There is no clear Michigan precedent on whether a seller's disclaimer of all warranties bars revocation by a buyer. However, this issue has been addressed by commentators and courts in other jurisdictions analyzing statutes like M.C.L. § 440.2608, which are based also on U.C.C. § 2–608:

A determination of the existence or non-existence of a nonconformity requires reference to the terms of the contract, including the law of warranty .... the courts do not look with favor on disclaimers that purport to disclaim responsibility for what the seller has in essence agreed to sell. But if the only relevant language in the agreement as to quality has been effectively declaimed, no nonconformity in the goods sufficient for revocation can exist. If the goods are sold "as is," comment 7 of 2–316 states the "buyer takes the entire risk as to the quality of the goods."

1 James J. White & Robert S. Summers, Uniform Commercial Code § 8–4 (4th ed. 1995 & Supp.2002) (footnotes omit-

---

**8.** The Ducharmes agreed to dismiss this claim because revocation claims against manufacturers not in privity with sellers are barred under Michigan law. *Henderson v. Chrysler Corp.*, 191 Mich.App. 337, 341–43, 477 N.W.2d 505 (1991).

ted); see also Barkley Clark & Christopher Smith, The Law of Product Warranties ¶ 7.03[4] (1984) ( "[R]evocation is a remedy for breach of warranty, and when the seller effectively disclaims warranty liability, there is no longer a right for which revocation can serve as a remedy."). This principle is also firmly established in the case law of jurisdictions with statutes similar to M.C.L. § 440.2608. *See, e.g., Schneider v. Miller*, 73 Ohio App.3d 335, 338–39, 597 N.E.2d 175, 177–78 (1991) (finding that "as is" clause bars rescission since buyer "takes the entire risk of quality of the goods involved") (emphasis in original); *Clark v. Ford Motor Co.*, 46 Or.App. 521, 527, 612 P.2d 316, 319 (1980) (holding that a buyer may not revoke acceptance as to the dealer where the dealer has disclaimed all warranties and the buyer in fact got the vehicle bargained for thus there was no nonconformity); accord *Crume v. Ford Motor Co.*, 60 Or.App. 224, 227–28, 653 P.2d 564, 566–67 (1982) (rejecting a result oriented approach to uphold disclaimer of warranties and thus no revocation).

The Michigan Court of Appeals' decision in *Henderson v. Chrysler Corp.*, 191 Mich.App. 337, 341–43, 477 N.W.2d 505, 508 (1991), implicitly supports this reading of M.C.L. § 440.2608. The *Henderson* court barred revocation claims against remote manufacturers who were not in privity with the seller, and left "plaintiff with his cause of action and remedies under the warranty." *Id.* at 341–43, 477 N.W.2d at 508; see also *Snyder v. Boston Whaler, Inc.*, 892 F.Supp. 955, 959 (W.D.Mich.1994) ("Plaintiff's revocation claim is barred as well, because plaintiff's right to revoke is based upon a finding that defendants breached a warranty.").

Since General effectively disclaimed all warranties in its Contract with Plaintiffs, the Court finds that Plaintiffs

waived their right to revoke. Plaintiffs may still potentially pursue claims based on their express limited warranties with Damon and FCCC, but Plaintiffs bear the risk of the quality of their motor home with respect to General based on the Contract and the Pre–Delivery Inspection Form. Accordingly, as there is no genuine issue of material fact in dispute, summary judgment will be entered for General.

*Watson, supra,* at *6–7 (footnotes omitted). The reasoning in *Watson* is correct; the Ducharmes have failed to make out a valid revocation claim against A & S.

### F.  Michigan Consumer Protection Act

The Ducharmes also claim that defendants violated the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 et seq. Specifically, the Ducharmes claim that defendants violated the MCPA by (1) disclaiming or limiting the implied warranties of merchantability, (2) failing to repair the motor home properly, and (3) failing to honor revocation.

Because A & S is entitled to summary judgment on the Ducharmes claims for breach of implied and express warranties, as well as revocation, the Ducharmes's MCPA claim against A & S also fails. *Marshall v. Meade Group, Inc.*, No. 224815, 2002 WL 44232, at *1 (Mich.Ct. App. Jan.11, 2002) (per curiam) (unpublished) ("In light of our determination that the trial court correctly concluded that [seller] made neither an implied nor an express warranty upon which [buyer] can state any valid claim … we further conclude [buyer's Michigan Consumer Protection Act] claims are without merit."). Likewise, the MCPA claims against Fleetwood, FCCC, and Cummins also fail since the Ducharmes have failed to establish a breach of warranty, express or implied, against them.

## IV. Conclusion

For the reasons stated above, defendants' motions for summary judgment are GRANTED. This case is DISMISSED.

SO ORDERED.