**Richard and Lynn PIDCOCK,
Plaintiffs,**

v.

**George EWING, et al, Defendants.**

No. 04–73710.

United States District Court,
E.D. Michigan,
Southern Division.

April 15, 2005.

Terry J. Adler, Grand Blanc, MI, for Plaintiffs.

Jeffrey R. Nowicki, Michael D. Dolenga, Dolenga & Dolenga, Bingham Farms, MI, Sandra A. Prokopp, Beresh & Prokopp, Southfield, MI, for Defendants.

**MEMORANDUM AND ORDER GRANTING MONACO'S MOTION FOR SUMMARY JUDGMENT AND GRANTING ROAD MASTER'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING GEORGE EWING'S MOTION FOR SUMMARY JUDGMENT**

COHN, District Judge.

### I. Introduction

This is a breach of warranty case arising out of the purchase of a motor home.

Plaintiffs Richard and Lynn Pidcock are the following defendants: George Ewing, Inc. (Ewing); Monaco Coach Corporation (Monaco); Cummins Engine Company (Cummins); Onan Corporation (Onan), RVA Company; APA Engineered Solutions, Inc.; Kwikee Products Co., Inc.; Dometic Corporation; Freightliner Corp.; and Road Master Chassis (Road Master). The Pidcocks bring the following claims: (I) violation of the Motor Vehicle Service and Repair Act; (II) Violation of the Michigan Consumer Protection Act; (III) Breach of Warranty under the Magnuson–Moss Warranty Act and Breach of Express and Implied Warranties under the U.C.C.; (IV) Breach of Warranty of Good Faith and Fair Dealing; and (V) Revocation.

Before the Court are the following motions:

1. Dometic Corporation's Motion for Partial Summary Judgment, seeking dismissal of all claims except a claim of breach of express warranty [1]

2. Monaco a/k/a/ Holiday Rambler [2] and Road Master's Motion for Partial Summary Judgment—seeking dismissal of all claims against Monaco Rambler and all claims except a claim of breach of express warranty against Road Master

3. Ewing's Motion for Summary Judgment—seeking dismissal of all claims against Ewing

For the reasons that follow, Monaco's motion for summary judgment will be granted, Road Master's motion for partial summary judgment will be granted, and Ewing's motion for summary judgment will be granted.[3]

## II. Background

The material facts as gleaned from the parties' papers follow.[4]

### A. General

On June 8, 2002, the Pidcocks purchases a 2002 Holiday Rambler Ambassador Motor Home for a base price of $136,223,56. They financed a portion of the purchase price. With interest on the loan plus taxes, the total price was $249,196.80. Holiday Rambler manufactured the coach portion or "house" of the motor home. Holiday Rambler is a wholly owned subsidiary of Monaco. Road Master manufactured the chassis portion of the motor home and it is also a wholly owned subsidiary of Monaco. Holiday Rambler then sold the completed motor home to Ewing, an independent dealer. Ewing sold the home to the Pidcocks. Delivery occurred on or about June 15, 2002.

The motor home was repaired by various defendants throughout the Pidcock's ownership. Eventually, the Pidcocks abandoned the motor home and attempted to revoke their acceptance.

Unable to resolve their dispute with defendants, the Pidcocks filed a complaint against defendants making the claims noted above.

---

1. At the hearing, the parties informed the Court that the Pidcocks resolved their claims against Dometic. Therefore, this motion is DENIED AS MOOT.

2. The Court will use the terms Holiday Rambler and Monaco interchangeably.

3. The status of the Pidcock's claims against the non-moving defendants is not clear.

4. The parties did not comply with the Court's motion practice guidelines for a motion for summary judgment. Of particular note, none of the parties' papers included a statement of material facts, a table of contents, or statement of the issues, all of which made the Court's task far more difficult than necessary.

B.  The Relevant Papers/Warranties

### 1.  Ewing—Dealer

Richard Pidcock and Ewing entered into a purchase agreement for the motor home on June 15, 2002. The purchase agreement contains the following provisions. On the front page, in all capital letters, it states: NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON THE REVERSE SIDE. The reverse side contains the following language, again in all capital letters:

10. **WARRANTIES AND EXCLUSIONS.** BUYER UNDERSTANDS THAT THERE MAY BE WRITTEN WARRANTIES COVERING THE UNIT PURCHASES, OR ANY COMPONENT(S), OR ANY APPLIANCE(S) WHICH HAVE BEEN PROVIDED BY THE MANUFACTURERS, DEALER HAS GIVEN BUYER AND BUYER HAS READ AND UNDERSTOOD A STATEMENT OF THE TYPE OF WARRANTY COVERING THE UNIT PURCHASES ON/OR COMPONENT(S) AND/OR APPLIANCE(S) BEFORE BUYER SIGNED THE SALES CONTRACT, THERE IS NO EXPRESS WARRANTY OR USED UNITS. EXCEPT WHERE PROHIBITED BY LAW: (i) DELIVERY BY DEALER TO BUYER OF THE WARRANTY BY THE MANUFACTURER OF THE UNIT PURCHASED, OR ANY COMPONENT(S), OR ANY APPLIANCE(S) DOES NOT MEAN DEALER ACCEPTS THE WARRANTY(S) OF SUCH MANUFACTURER(S), (ii) BUYER ACKNOWLEDGES THAT THESE EXPRESS WARRANTIES MANDE BY THE MANUFACTURER(S) HAVE NOT BEEN MADE BY DEALER EVEN IF THEY SAY DEALER MADE THEM OR SAY DEALER MADE SOME OTHER EXPRESS WARRANTY, AND (iii) DEALER IS NOT AN AGENT OF THE MANUFACTURER(S) FOR WARRANTY PURPOSES EVEN IF THE DEALER COMPLETES, OR ATTEMPTS TO COMPLETE REPAIRED FOR THE MANUFACTURER(S). Excepts in WV, MS, WI OR WHERE OTHERWISE PROHIBITED BY LAW: (i) BUYER UNDERSTANDS THAT THE IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE AND ALL OTHER WARRANTIES EXPRESS OR IMPLIED ARE EXCLUDED BY DEALER FROM THIS TRANSACTION AND SHALL NOT APPLY TO THE UNIT OR ANY COMPONENT OR ANY APPLIANCE CONTAINED THEREIN, (ii) BUYER UNDERSTANDS THAT DEALER MAKES FOR WARRANTIES FROM THIS TRANSACTION WHATSOEVER REGARDING THIS UNIT OR ANY COMPONENT OR ANY APPLIANCE CONTAINED THEREIN, (iii) BUYER UNDERSTANDS THAT DEALER DISCLAIMS AND EXCLUDES FROM THIS TRANSACTION ALL WARRANTY OBLIGATIONS WHICH EXCEED OR EXIST OVER AN ABOVE THE LEGAL WARRANTIES REQUIRED BY STATE LAW.

11. **LIMITATION OF DAMAGES.** EXCEPT IN WV AND ANY OTHER STATES WHICH DOES NOT ALLOW THE LIMITATION OF INCIDENTAL, AND/OR CONSEQUENTIAL DAMAGES, THE FOLLOWING LIMITATION OF DAMAGES SHALL APPLY. IF ANY WARRANTY FAILS BECAUSE OF ATTEMPTS AT REPAIR AND NOT COMPLETED WITHIN A REASONABLE TIME OR ANY REASONS ATTRIBUTED TO THE MANUFACTURER, INCLUDING MAN-

UFACTURERS WHO HAVE GONE OUT OF BUSINESS, BUYER AGREES THAT IF BUYER S ENTITLED TO ANY DAMAGES AGAINST DEALER, BUYER'S DAMAGES ARE LIMITED TO THE LESSER OF EITHER THE COST OF NEEDED REPAIRS OR REDUCTION INT EH MARKET VALUE OF THE UNIT CAUSED BY THE LACK OF REPAIRS. BUYER ALSO AGREES THAT ONE BUYER HAS ACCEPTED THE UNIT, EVEN THOUGHT THE MANUFACTURER(S) WARRANTY DOES NOT ACCOMPLISH ITS PURPOSES, THE BUYER CANNOT RETURN THE UNIT TO DEALER AND SEEK A REFUND FOR ANY REASON.

As noted above, the Pidcocks financed part of the purchase of the motor home. The financing arrangement is reflected in a Motor Vehicle Purchase Agreement, which the parties refer to as a retail installment sales contract (RISC). The Pidcocks financed the motor home through Ewing who in turn immediately assigned his interest to Bank One. The RISC was executed on June 15, 2002. The RISC is signed by both Richard and Lynn Pidcock. The motor home is registered with the State of Michigan in Richard Pidcock's name only.

### 2. Monaco a/k/a/ Holiday Rambler—Manufactured the House Portion

Holiday Rambler provided a limited warranty for twelve months or 24,000 miles and a sixth month/50,000 mile warranty for the steel or aluminum frame of the sidewalls (excluding side outs), roof, and rear and front walls. The limited warranty disclaims (in all capital letters) any implied warranties of merchantability or fitness for a particular purpose. The warranty covers "defects in the manufacture of your motor home and defects in materials used to manufacture your motor home." It also contains the following limitation on legal action (in bold print and in all capital letters where indicated):

**LEGAL REMEDIES:**

**ANY ACTION TO ENFORCE THIS EXPRESS OR ANY IMPLIED WARRANTY SHALL NOT BE COMMENCED MORE THAN ONE (1) YEAR AFTER THE EXPIRATION OF THE WARRANTY.** Some states do not allow the reduction in the statute of limitations, so the above may not apply to you.

Richard Pidcock signed an acknowledgment of the Holiday Rambler warranty.

### 3. Road Master—Manufactured the Chassis

Road Master also provided a limited warranty for twenty-four months or 24,000 miles. Like the Holiday Rambler warranty, it disclaimed any implied warranties and contained a limitation provision on commencing a legal action more than one year after expiration of the warranty.

### III. Summary Judgment

Summary judgment will be granted when the moving party demonstrates that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. There is no genuine issue of material fact when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The nonmoving party may not rest upon his pleadings; rather, the nonmoving party's response "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Showing that there is some metaphysical doubt as to the

material facts is not enough; "the mere existence of a scintilla of evidence" in support of the nonmoving party is not sufficient to show a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Rather, the nonmoving party must present "significant probative evidence" in support of its opposition to the motion for summary judgment in order to defeat the motion. *See Moore v. Philip Morris Co.*, 8 F.3d 335, 340 (6th Cir.1993); *see also Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. Additionally, and significantly, "affidavits containing mere conclusions have no probative value" in summary judgment proceedings. *Bsharah v. Eltra Corp.*, 394 F.2d 502, 503 (6th Cir.1968).

The Court must decide "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *In re Dollar Corp.*, 25 F.3d 1320, 1323 (6th Cir.1994) (quoting *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505). The Court "must view the evidence in the light most favorable to the non-moving party." *Employers Ins. of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 101 (6th Cir.1995). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Only where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law may summary judgment be granted. *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir.2001).

IV. Monaco and Road Master's Motion

A. Breach of Express Warranty Claims Against Monaco Only

■ Monaco says that the Pidcock's claim for breach of express warranty against it is barred by the one year limitations period in the warranty. The limited warranty is for twelve months or 24,000 miles.[5] The Pidcocks purchased the motor home on June 8, 2002; thus the warranty expired on June 3, 2002 and they had one year from that date to file suit. The Pidcocks did not file, however, until August 25, 2003.

Michigan allows for limitations in a contract actions such as this one. M.C.L. § 440.2725 provides:

(1) An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued. **By the original agreement the parties may reduce the period of limitation to not less than 1 year but may not extend it.**

(2) A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered.

(Emphasis added).

The Pidcocks, however, argue that Monaco did not properly limit the statute of limitations. Their argument is difficult to follow; it appears that they are saying that because the RISC controls the parties' relationship, i.e. it is the "original agreement" referenced in the statute. Because it does not mention any warranties or contain a limitation period, no limitation period exists. The Pidcocks further note that the limitation language in printed in single space and was not seen by them until after

---

**5.** The sixth month/50,000 mile warranty does not appear to be at issue as the Pidcock's complaint does not address complaints regarding the structure or the roof.

the motor home was delivered nor was it signed by both parties.

■ The Pidcocks also argue that Monaco has ignored M.C.L. § 440.2313b which provides:

Sec. 2313b. An express warranty covering goods sold to a purchaser in this state shall be extended by a period equal to the number of days prescribed in subdivisions (a) and (b), if the cumulative number of days is more than either 10 days or 10% of the number of days of the warranty. A merchant or warrantor shall at the time the goods are repaired give the purchaser a writing stating the time period prescribed in subdivisions (a) and (b):

(a) The date from which the goods are delivered to the merchant or the warrantor for a warranteed repair to the date the purchaser is informed that the necessary repair has been completed.

(b) The date from which the merchant or warrantor attempts to make a warranteed repair to the goods at the purchaser's residence, domicile, or place of business to the date the necessary repairs are completed. In addition to this time period, the number of days preceding the date the merchant or warrantor begins a repair during which the goods were inoperative due to the need for a warranteed repair beginning with the date the purchaser notifies the merchant or warrantor in writing that the goods are inoperative and the merchant or warrantor receives the notice.

Here, the motor home was in for warranty repairs for more than 240 days. Under section 440.2313b, the written warranty was extended by at least 240 days. Using a date of June 15, 2002—the date the Pidcocks took delivery—the warranty would be extended to at least February 10, 2005.

Monaco's position is well-taken. Michigan law clearly provides that a limitations period may be shortened. The Pidcock's argument that the RISC controls lacks merit. The limited warranty is contained in a document from Holiday Rambler—the RISC has nothing to do with it. Holiday Rambler was not a party to the financing agreement and therefore any arguments as to the "single document rule" simply do not apply. The limitation therefore complies with Michigan law.

As to whether the statute of limitations has been extended under § 440.2313b, as Monaco points out, this section only extends the warranty coverage period, not the statute of limitations. Moreover, and most importantly, Monaco's limited warranty is not an "express warranty" within the meaning of § M.C.L. § 440.2313 which defines an express warranty as follows:

(1) Express warranties by the seller are created as follows:

(a) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

(b) A description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.

(c) A sample or model which is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the sample or model.

In *Rokicsak v. Colony Marine Sales and Service, Inc.,* 219 F.Supp.2d 810 (E.D.Mich.2002), the district court examined a purchase agreement for a boat. The agreement stated that "Buyer agrees that the sole exclusive remedy against Seller shall be limited to the repair and replacement of parts and equipment, provided Seller is promptly notified in writing of any defect." 219 F.Supp.2d at 813. The

court examined the warranty in light of § 400.2313:

> The Purchase Agreement language relied upon by plaintiff as creating an express warranty plainly described "the sole exclusive remedy" against Colony Marine "to the extent that any warranties exists which have not been disclaimed." Such does not constitute an affirmation of fact or promise to which the boat had to conform, a description of the boat, or a sample or model of the boat.

*Id.* at 816.

Here, Holiday Rambler's Limited Warranty also served to describe the sole exclusive remedy against it. That is, for the first 12 months or 24,000 miles, the Pidcock's sole remedy for defects is for repair and replacement. These limitations do not fit within the ambit of § 400.2313. *See also Gernhardt v. Winnebago Industries*, 2003 WL 23976324 (E.D.Mich.2003) (J. Borman) (unpublished). Thus, the extension of warranty provision does not apply to the Holiday Rambler warranty in the first instance.

Because the Pidcocks did not file their claim against Monaco regarding the Holiday Rambler warranty with the valid limitation period, Monaco's motion is granted to the extent that the Pidcocks allege a breach of express warranty against it.

### B. Revocation of Acceptance Claim Against Monaco and Road Master

■ Monaco and Road Master say that the Pidcocks have no claim against them for revocation of acceptance because such a remedy is not available against a remote manufacturer.

Revocation under Michigan law is found at M.C.L. § 440.2608 which provides:

> (1) The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it

> (a) on the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured; or

> (b) without discovery of such nonconformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.

> (2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it.

> (3) A buyer who so revokes has the same rights and duties with regard to the goods involved as if he had rejected them.

Under Michigan Law, "[r]evocation of acceptance ... is typically utilized against an immediate seller ... there is nothing to indicate that the Legislature intended the revocation of acceptance of a contract to apply to parties not in privity of contract." Acceptance under the UCC concerns the relationship between a buyer and a seller ... Thus, revocation is inextricably connected to the contractual relationship between a buyer and a seller. *Henderson v. Chrysler Corp.*, 191 Mich.App. 337, 341–43, 477 N.W.2d 505 (1991).

The Pidcocks do not mention *Henderson*. Based on *Henderson*, it is clear that the Pidcocks have no claim against Monaco or Road Master, remote manufacturers not in privity with them, for a claim of revocation of acceptance.

### 3. Implied Warranty Claims Against Monaco and Road Master

■ Monaco and Road Master say that the Pidcock's claims claiming breach of implied warranty must be dismissed because neither of them is in privity with the

Pidcocks. The Pidcocks claim that these defendants breached the implied warranties of merchantability under M.C.L. § 440.2314. M.C.L. § 440.2314(1) states: "Unless excluded or modified (section 2316), a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."

Another federal district court addressed this issue in an unpublished opinion. This Court stated:

"[I]n order for a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and the defendant." *Mt. Holly Ski Area v. U.S. Elec. Motors*, 666 F.Supp. 115, 120 (E.D.Mich. 1987). The *Mt. Holly* court recognized that the Courts of Appeals of Michigan were split on whether privity is required to state a claim for breach of implied warranties where there is no allegation of personal injury. *Id.* at 118–20; compare *Auto Owners Ins. Co. v. Chrysler Corp.*, 129 Mich.App. 38, 341 N.W.2d 223 (1983) (finding privity required), and *N. Feldman & Son, Ltd. v. Checker Motors Corp.*, 572 F.Supp. 310, 315 (S.D.N.Y. 1983) (applying Michigan law and finding privity required), with *Cova v. Harley Davidson Motor Co.*, 26 Mich.App. 602, 608–10, 182 N.W.2d 800, 804–05 (1970) (finding privity not required). However, following its extensive review of case law and scholarly commentary, the *Mt. Holly* court concluded that, under the modern trend, privity is required. *Mt. Holly*, 666 F.Supp. at 120 (citing 1 James J. White & Robert S. Summers, Uniform Commercial Code § 11–5 (2d ed.1980)). Plaintiffs have not brought to the Court's attention any Michigan case subsequent to *Mt. Holly* which challenges the holding in *Mt. Holly*. *Mt. Holly* appears to have the correct analysis in holding that in order for

a plaintiff to recover economic losses on a breach of implied warranty theory under Michigan contract law, privity of contract must exist between the plaintiff and the defendant. *Mt. Holly*, 666 F.Supp. at 120. Thus, to avoid summary judgment, Plaintiffs must establish that they were in privity with Damon and FCCC.

*Watson v. Damon Corp.*, 2002 WL 32059736, *5–6 (W.D.Mich. Dec. 17, 2002) (J. Quist) (unpublished). Other judges in this district, also after conducting a thorough analysis of Michigan law, followed *Mt. Holly* and held that privity is required. *See Chiasson v. Winnebago*, 2002 WL 32828652 (E.D.Mich. May 16, 2002) (J. Steeh) (unpublished); *Gernhardt, supra* (J. Borman); *Pack v. Damon Corp.*, 320 F.Supp.2d 545 (E.D.Mich.2004). But see *Michels v. Monaco Coach*, 298 F.Supp.2d 642 (E.D.Mich.2003) (J. Duggan) (holding privity is not required). This Court followed *Watson* and *Chiasson* in a prior case. *See Ducharme v. A & S*, 03–CV–70729 (E.D.Mich. Jan. 14, 2004) (unpublished) (J. Cohn).

Based on these decisions, privity is required in order for a consumer purchaser to make out a claim for breach of implied warranty against a remote manufacturer. The fact that an express warranty runs from the remote manufacturer to the purchaser does not create the requisite privity.

Here, it is uncontested that the Pidcocks were not in privity with Monaco or Road Master. Accordingly, Holiday Rambler and Road Master are entitled to summary judgment on the Pidcock's claims for breach of the implied warranty of merchantability.

4. Magnuson–Moss Warranty Act Claim for Breach of Implied Warranty Against Monaco and Road Master

■ The MMWA, 15 U.S.C. § 2308, "serves to *supplement state-law* implied

warranties only by prohibiting their disclaimer in certain circumstances," specifically when "the supplier disclaims an implied warranty while either making a written warranty or entering into a service contract." *Rokicsak v. Colony Marine Sales & Serv., Inc.*, 219 F.Supp.2d 810, 817–18 (E.D.Mich.2002) (emphasis in original) (applying Michigan law). "The [MMWA] is based upon the premise that suppliers of consumer goods vigorously use written express warranties as advertising and merchandising devices. If they are to be so used, they must meet federal standards in terms of disclosure and remedies provided to an aggrieved consumer. Under the [MMWA], no seller is forced to give an express written warranty, but if one is offered, it must comply with the standards set forth in the law." 59 A.L.R. Fed. 461 (1982).

"The MMWA was promulgated to increase consumer rights and protections by imposing minimum standards for manufacturers' warranties and by providing various avenues for consumer redress." *Walsh v. Ford Motor Co.*, 627 F.Supp. 1519, 1522 (D.D.C.1986). Section 110(d) of the MMWA provides, in pertinent part, that

> [A] consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter, or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief—
>
> (A) in any court of competent jurisdiction in any State or the District of Columbia; or
>
> (B) in an appropriate district court of the United States, subject to paragraph (3) of this subsection.

The MMWA is inapplicable to Monaco and Road Master. As stated above, the Pidcocks were not in privity with these defendants at the time of sale and as a result, the Pidcocks cannot make out an implied warranty claim against them. Because the MMWA merely limits an express warranter or service contract provider from disclaiming certain implied warranties, Monaco and Road Master cannot be prohibited from disclaiming warranty obligations that never existed.[6]

**5. Michigan Consumer Protection Act**

The Pidcocks also claim that Monaco and Road Master violated the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901 et. seq. The Pidcock's claim fails to specifically allege how these defendants violated the MCPA—this claim rather only re-states § 445.901 in the complaint. In their response to the motion, the Pidcocks state that Monaco and Road Master violated the MCPA by failing to disclaim all implied warranties on the RISC and failed to return their payment when they revoked acceptance.

However, because the Court is granting summary judgment in favor of Monaco and Road Master for breach of implied warranties and in the case of Monaco, express warranties, as well as revocation, the Pidcocks' MCPA claim against them arising out of these allegations fail. *Marshall v. Meade Group, Inc.*, No. 224815, 2002 WL 44232, at *1 (Mich.App. Jan. 11, 2002) (per curiam) ("In light of our determination that the trial court correctly concluded that [seller] made neither an implied nor an express warranty upon which [buyer] can state any valid claim ... we further conclude [buyer's Michigan Consumer Protection Act] claims are without merit.").

---

**6.** Because the Pidcocks do not have a valid claim against Monaco for violation of an express warranty because of the expiration of the statute of limitations, their MMWA arising out of a breach of express warranty also fails.

Should the Pidcocks wish to replead their claim in light of the Court's ruling, they may do so. At this point, their MCPA claims against Monaco and Road Master are DISMISSED.

### 6. Breach of Duty of Good Faith and Fair Dealing against Monaco and Road Master

■ Monaco and Road Master say that this claim must be dismissed because Michigan law does not provide for an independent cause of action for a breach fo duty of good faith and fair dealing. M.C.L. § 440.1203 provides:

Every contract or duty within this act imposes an obligation of good faith in its performance or enforcement.

The Comment to this section provides in part:

*This section does not support an independent cause of action for failure to perform or enforce in good faith.* Rather, this section means that a failure to perform or enforce, in good faith, a specific duty or obligation under the contract, constitutes a breach of that contract or makes unavailable, under the particular circumstances, a remedial right or power. This distinction makes it clear that the doctrine of good faith merely directs a court towards interpreting contracts within the commercial context in which they are created, performed, and enforced, and does not create a separate duty of fairness and reasonableness which can be independently breached.

(Emphasis added).

Thus, while § 2304 imposes an obligation of good faith on contracting parties, it does not support an independent cause of action for breach of that obligation. *See Watson v. Damon Corp.*, 02–584, 2002 WL 32059736 (Dec. 17, 2002) (unpublished) (J. Quist).

### V. Ewing's Motion

Ewing seeks summary judgment on all of the Pidcock's claims. They will be addressed in turn below.

### A. Express and Implied Warranties

Ewing argues that the Pidcock's claims against it arising out of breach of express or implied warranty must be dismissed because Ewing disclaimed all warranties. The Pidcocks say they were not properly disclaimed.

As to an implied warranty, it is clear that it can be excluded. M.C.L. § 440.2316(2) states:

to exclude or modify the implied warranty of merchantability or any part of it the language must mention merchantability and in case of a writing must be conspicuous, and to exclude or modify any implied warranty of fitness the exclusion must be by a writing and conspicuous. Language to exclude all implied warranties of fitness is sufficient if it states, for example, that "There are no warranties which extend beyond the description on the face hereof."

A term or clause is conspicuous "when it is so written that a reasonable person against whom it is to operate ought to have noticed it." M.C.L. § 440.1201(10). The section also states that a printed heading in capital letters or larger or contrasting type or color is conspicuous. *Id.*

■ As an initial matter, the Pidcock's argue that the operative agreement is the RISC, not the purchase agreement based on the "single document rule" or doctrine of merger. This argument lacks merit. The RISC is part of the transaction, however, the purchase agreement is also a part of the transaction and did not disappear when the financing agreement was entered. The purchase agreement, which contains the language regarding warranties, is the operative document. The Pid-

cocks are not suing to enforce the terms of the RISC, i.e. their dispute is not about the financing of the motor home but rather the condition of the motor home. In other words, they are challenging Ewing's performance of the warranties in the purchase agreement. Therefore it is immaterial that the warranty disclaimers appear in a separate document from the RISC. *See Harnden v. Ford Motor Co.*, 04–72036 (E.D.Mich. Sept. 8, 2004) (unpublished) (J. Edmunds).

The purchase agreement is a two-sided document. As noted above, it says in capital letters and contrasting type:

> NOTE: WARRANTY AND EXCLUSIONS AND LIMITATIONS OF DAMAGES ON THE REVERSE SIDE.

The first side also states, in all capital letters:

> DEALER AND BUYER CERTIFY THAT THE ADDITIONAL TERMS AND CONDITIONS PRINTED ON THE BACK OF THIS CONTRACT ARE AGREED TO AS PART OF THIS AGREEMENT, THE SAME AS IF PRINTED ABOVE THE SIGNATURE
> . . .

It further says, in all capital letters and in contrasting type:

> THIS AGREEMENT CONTAINS THE ENTIRE UNDERSTANDING BETWEEN DEALER AND BUYER AND NO OTHER REPRESENTATION OR INDUCEMENT, VERBAL OR WRITTEN, HAS BEEN MADE WHICH IS NOT CONTAINED IN THIS AGREEMENT.

The reverse side contains the exclusion provisions set forth above. The purchase agreement contains multiple references to the exclusions on the front side, in all capital letters and in contrasting type. The disclaimer on the back of the form is in all capital letters which sets it apart from most of the other language. Under these circumstances, a reasonable person against whom the disclaimer is to operate ought to have noticed it. The disclaimers in the purchase agreement are therefore conspicuous as a matter of law. As a result, Ewing has effectively disclaimed all warranties and is entitled to summary judgment on the Pidcock's express and implied warranty claims. It is noted that another judge in the Western District of Michigan reached the same conclusion after reviewing an identical purchase agreement. *Pitts v. Monaco Coach Corp.*, 03–CV–618 (W.D. Mich. June 21, 2004) (J. Bell) (unpublished).

### B. Revocation of Acceptance

As noted above, Michigan law provides for revocation of acceptance under certain circumstances. *See* M.C.L. § 440.2608(1). "[I]f the only relevant language in the agreement as to quality has been effectively disclaimed, no nonconformity in the goods sufficient for revocation can exist." *Watson*, supra, at *7 (quoting 1 James J. White & Robert S. Summers, Uniform Commercial Code § 8–4 at 457 (4th ed. 1995 & Supp.2002)). In addition to disclaiming any warranties, Ewing also informed the Pidcocks that revocation was not an option. As noted above, the purchase agreement states, in all capital letters, that " . . . EVEN THOUGH THE MANUFACTURER(S)' WARRANTY DOES NOT ACCOMPLISH ITS PURPOSE, THAT I CANNOT RETURN THE UNIT TO YOU AND SEEK A REFUND FOR ANY REASON." Accordingly, Ewing is entitled to summary judgment on the Pidcock's claim of revocation of acceptance. *See Pitts, supra,* slip op at 10–11.

### C. Michigan Consumer Protection Act

The Pidcocks claim that Ewing has violated the MCPA by not properly disclaiming its warranties in the financing agreement and failing to return payments when

they revoked acceptance. However, as explained above, Ewing properly disclaimed all warranties and the Pidcocks cannot maintain a claim for revocation of acceptance against it. The Pidcocks, however, argue that Ewing has admitted to violating the MCPA. Ewing has made no such admission.

However, the Pidcocks may, although they have not requested, file an amended claim for violation of the MCPA, identifying with particularity to enable the various defendants, including Ewing, to which of them the claim applies. The Pidcocks should analyze their claim in light of this decision because any allegations as to a breach of warranty cannot sustained a claim under the MCPA.

### D. Breach of Duty of Good Faith and Fair Dealing

The Pidcock's claim against Ewing fails for the same reason that their claim against Monaco and Road Master fails; there is no independent cause of action for breach of the duty of good faith and fair dealing.

### E. Motor Vehicle Service and Repair Act

The Pidcocks claim that Ewing violated Michigan's Motor Vehicle Service and Repair Act, M.C.L. § 257.1301 et seq. (MVSRA).[7] Ewing correctly notes that the MVSRA defines "motor vehicle" to expressly exclude "the dwelling or sleeping portions of a motor home, trailer, or any recreational vehicle having similar facilities which are not directly connected with the drive mechanism of the vehicle or other areas of repair which are not directly connected with the drive mechanism of the vehicle or other areas of repair which would require certification of motor vehicle mechanics as specified in this act or rules promulgated pursuant to this act." M.C.L. § 257.1302(d). The record shows

that Ewing only repaired the house portion of the motor home, not the chassis. Because the house portion is specifically excluded from coverage, the Pidcocks cannot make out a claim for a violation of the MVSRA against Ewing. *See Harnden v. Ford Motor Co.*, 04–72036 (Mar. 30, 2005) (unpublished) (J. Edmunds).

### VI. Conclusion

For the reasons stated above, Monaco's motion for summary judgment is GRANTED. All claims against Monaco are DISMISSED. Road Master's motion for partial summary judgment is GRANTED. All claims except a claim for violation of an express warranty are DISMISSED. Ewing's motion for summary judgment is GRANTED. All claims against Ewing are DISMISSED.

The Pidcocks shall file an amended complaint within 10 days consistent with this Order.

SO ORDERED.

---

**7.** This claim appears to be alleged only against Ewing.